IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION


KRISTINA L. WAY, *et al.*,                          :

    Plaintiffs,                                    :

                                       Case No. 3:03cv386

      vs.                                      :

                                     JUDGE WALTER HERBERT RICE

MONTGOMERY COUNTY DEPARTMENT :
OF JOB AND FAMILY SERVICES, *et al.*,

                           :

    Defendants.

---

DECISION AND ENTRY SUSTAINING MOTION OF DEFENDANTS
SUSAN HALTER AND MONTGOMERY COUNTY CHILDREN SERVICES
FOR SUMMARY JUDGMENT (DOC. #37) AND OVERRULING, IN
PART, AND DEFERRING DECISION, IN PART, ON PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #39);
PLAINTIFFS' PENDENT STATE LAW CLAIMS AGAINST SUSAN
HALTER AND MONTGOMERY COUNTY CHILDREN SERVICES
DISMISSED, WITHOUT PREJUDICE TO REFILING IN A STATE COURT
OF COMPETENT JURISDICTION

---

Among other Motions, currently pending before the Court, are a Motion for

Summary Judgment, by Defendants Montgomery County Department of Children

Services[1] ("Montgomery County") and Susan Halter (Doc. #37) and a Motion for

---

[1]By stipulation of the parties, Montgomery County Department of Children
Services was substituted for Montgomery County Department of Job and Family
Services, as the intended Defendant. Doc. #11.

    It is unclear to the Court whether the Montgomery County Department of
Children Services is *sui juris*. Because neither party raised this issue and based on

Partial Summary Judgment by Plaintiffs, Kristina L. Way and Terry Way (Doc. #39).[2]  The facts of this case center on Kristina Way's service as a foster parent for a two-year old child.  During a visit with the child's natural mother, the attending caseworker noticed bruises on the child, which set in motion a chain of events, including Kristina Way's arrest, that culminated in the filing of this lawsuit.

The Ways bring suit against Montgomery County, Halter (an employee of Montgomery County), the Clark County Commissioners (the arresting municipality), the Clark County Sheriff and Deputy Sheriff Chad Hobbs (the arresting officer).[3]

---

the Court's ultimate conclusions in favor of the Defendants herein, the Court finds it unnecessary to resolve this issue, although the Defendants might wish to pursue it should this case proceed in state court.

[2]Both Kristina and Terry Way bring suit individually and as parents and natural guardians of their minor children, Kirsten Way, Kendra Way, Keegan Way, Kinzie Way and Kanaan Way. Doc. #26, Attach #1.

[3]Following is a  summary of the claims, as asserted by the Plaintiffs in the Amended Complaint:
- Count I:  failure to provide notice of Miranda rights, in violation of the Fifth Amendment, and unreasonable detention and seizure, in violation of the Fourth Amendment, against Halter and Hobbs
- Count II: violation of the Fifth Amendment right to decline to respond to interrogation and libel, against Halter
- Count III:  making an arrest on an inapplicable charge of domestic violence and failing to obtain a warrant, in violation of the Fourth Amendment, against Hobbs
- Count IV: conspiracy, in violation of 42 U.S.C. § 1985, against Halter and Hobbs
- Count V: state law claims for libel, false arrest, malicious prosecution, battery, intentional infliction of emotional distress and intentional interference with contracts for employment and provision of foster services, against Halter and Hobbs
- Count VI: state law claims for intentional infliction of emotional distress and loss of the society, comfort, care and consortium of Kristina Way, against Halter and Hobbs

2

The Court's Decision hereunder will address the dispute between the Plaintiffs and Defendants Montgomery County and Halter ("Defendants").  As to these two Defendants, the Complaint alleges various federal and state claims.  The asserted federal claims, all pertaining to Plaintiff Kristina Way ("Plaintiff" or "Way"), are as follows:  (1) unreasonable detention and seizure, in violation of the Fourth Amendment, against Halter (Count I); (2) violation of the Fifth Amendment right to decline to respond to interrogation and libel, against Halter (Count II);[4] (3) conspiracy, in violation of 42 U.S.C. § 1985, against Halter (Count IV); (4) unlawful deprivation of the Plaintiff's constitutional rights, as a result of Montgomery County's policies, procedures and customs, as well as its failure to properly train its employees, against Montgomery County (Count VII); and (5) a

---

- Count VII:  unlawful deprivation of Kristina Way's constitutional rights, as a result of Montgomery County's policies, procedures and customs, as well as its failure to properly train its employees, against Montgomery County
- Count VIII:  unlawful deprivation of Kristina Way's constitutional rights, as a result of Clark County's policies, procedures and customs, as well as its failure to properly train its employees, against Clark County
- Count IX:   a violation of Kristina Way's Fourteenth Amendment due process rights, against Montgomery County
- Count X: state law claim for loss of consortium with potential future foster or adoptive children, against presumably against all Defendants

Doc. #26, Attach #1.

[4]There is much redundancy in the Amended Complaint.  For example, along with numerous state law claims, the Plaintiffs assert a violation of their Fourth Amendment right to be free from unreasonable seizure and arrest and a violation of their Fourteenth Amendment due process rights, in Counts II.  Such constitutional claims are also alleged in Counts I and IX, respectively, with no indication that the claims are based on different sets of facts.

3

violation of the Plaintiff's Fourteenth Amendment due process rights, against

Montgomery County (Count IX).[5] Doc. #26, Attach #1.

The Defendants move the Court for summary judgment on all of the

Plaintiffs' claims. Doc. #37.  The Plaintiffs ask for summary judgment, as to the

due process claim against Montgomery County. Doc. #39.[6]  The Court will now

turn to an analysis of the Defendants' Motion for Summary Judgment, while also

addressing the Plaintiffs' Motion, in the discussion pertaining to the alleged due

process violation.


I.     FACTS

In October, 2001, Plaintiffs Terry and Kristina Way, who were licensed

foster parents, received placement of two foster children in their Clark County

home. Doc. #45, Attach. #4 (Way Dep.) at 25.  One child was an infant and the

other, who is the subject of the present action, was a two-year girl. Id. at 26-27.

Kristina Way reports that the two-year old child often fell, which prompted Way to

contact the caseworker on several instances to advise her of the falls. Id. at 69-

_____

[5]The Plaintiffs also assert various state law claims, which the Court will not address.  None of the Plaintiffs' federal claims survive the Defendants' Motion for Summary Judgment and the Court will not exercise pendent jurisdiction over the remaining state law claims, as further explained in this Opinion.

[6]In their Motion for Partial Summary Judgment, the Plaintiffs also seek a ruling on whether there was probable cause for arresting Way. Doc. #39 at 6-8. The Court will address this issue when it considers, in a separate opinion, the Motion for Summary Judgment filed by the Clark County Defendants (Doc. #38).

73.[7]

On November 26, 2001, Kristina took the child to the offices of the Montgomery County Department of Children Services to allow the child to visit with her natural mother. Id. at 33.  During the visit, and while assisting the child in the bathroom, a caseworker noticed bruises on the child's bottom. Doc. #45, Attach. #6 (Weger Dep.) at 16-17.  Upon an inquiry by the caseworker as to what happened, the child responded, "mommy whipped me." Id. at 17-18.  "Mommy" was the name the child used to identify Kristina Way. Id.; Doc. #45, Attach. #4 (Way Dep.) at 27.

Suspecting possible child abuse, the caseworker summoned Defendant Susan Halter, a Montgomery County special investigator with training in questioning young children concerning potential abuse. Doc. #45, Attach. #5 (Halter Dep.) at 16-23, 33-34.  In an interview between Halter and the child, which also included a Montgomery County Sheriff's Deputy and the original caseworker, the child was again questioned as to how she got the bruises and responded "Mommy hit me," although, when questioned further, she could not provide more detailed information. Id. at 39, 104-07; Doc. #45, Attach. #8 (Ridgeway Aff.) ¶ 4. At this point in time, three decisions were made, to wit: (1) to have the child

---

[7]As will be more fully described hereunder, Way claims that the child's injuries were the result of the child falling from a small table.  There is some confusion between the parties as to whether or when Way called to report such a fall. E.g., Doc. #45, Attach. #4 (Way Dep.) at 69-73; Doc. #45; Attach. #10 (Evans-Howe Aff.) ¶¶ 7-8, 14.

examined by a pediatrician at Children's Medical Center ("hospital"), (2) to request that Kristina Way meet them at the hospital, and (3) to request that Clark County dispatch a Sheriff's deputy to the hospital. Doc. #45, Attach. #4 (Way Dep.) at 37-39; Doc. #45, Attach. #5 (Halter Dep.) at 49-53. Clark County sent Defendant Deputy Chad Hobbs to investigate. Doc. #45, Attach. #4 (Way Dep.) at 41-42.

Hobbs states that when he interviewed the child at the hospital, the child similarly told him that Kristina Way had hit her. Doc. #45, Attach. #2 (Hobbs Dep.) at 25. When Way arrived at the hospital, Hobbs and Halter questioned her about the child's bruises. Doc. #45, Attach. #4 (Way Dep.) at 42. She stated that the child had fallen off a small plastic table onto some toys on the floor. Doc. #45, Attach. #5 (Halter Dep.) at 69-70, 80. At some point in time, another caseworker, this one from the private foster care agency that managed Way's foster parenting arrangement, arrived at the hospital and told Halter that, about eleven days before, she had observed Way spank her natural child with a wooden spoon and threaten to do the same to the foster child. Doc. #45; Attach. #10 (Evans-Howe Aff.) ¶¶ 6-8, 14.[8]

After this, the order of events is in dispute. Halter testifies that, prior to receiving a report from the attending physician, Hobbs indicated that he was not going to await the doctor's report and was preparing to place Way under arrest.

---

[8]The caseworker testified that after hearing her threaten the foster child, she "instructed Kristina about appropriate ways of disciplining foster children and that the [S]tate's rules . . . prohibited parents from physically punishing foster children." Doc. #45; Attach. #10 (Evans-Howe Aff.) ¶ 8.

Doc. #45, Attach. #5 (Halter Dep.) at 84. Deputy Hobbs, on the other hand, testifies that, prior to his making the arrest, Halter told him that the doctor had examined the child and stated that the bruises were not consistent with a fall, as described by Way. Doc. #45, Attach. #2 (Hobbs Dep.) at 25. Nevertheless, at some point in time, Hobbs phoned his supervisor to ask whether an arrest should be made, given the circumstances, and after receiving an affirmative response, arrested Way, handcuffed her and transported her to the Clark County Jail. Doc. #45, Attach. #2 (Hobbs Dep.) at 30; Doc. #45, Attach. #4 (Way Dep.) 48-49.[9] She was booked on a charge of domestic violence and detained for about four hours, until her husband posted bail. Id. at 78, 193. The Clark County Prosecutor eventually dropped all criminal charges. Id. at 195.

When later questioned about the extent of his training, in the area of handling alleged child abuse cases, and, specifically, in how to interview child witnesses, Hobbs reported that he had never had any formal training in these areas. Doc. #45, Attach. #2 (Hobbs Dep.) at 14, 29-30. He further testified, however, that he had on-the-job training in how to handle alleged child abuse cases, as demonstrated by the fact that he had been involved with more than twenty such cases, prior to the incident in question. Id. at 10, 14-15.

At some point in time, the hospital's attending physician examined the child

---

[9]Hobbs did not include in his arrest report anything allegedly communicated by the doctor to him or to a third party. Doc. #37, Attach. #2 (Hobbs Aff., dtd. Nov. 24, 2005, and Ohio Uniform Incident Report).

7

and concluded that the bruises could either have been intentionally inflicted or the child could have sustained them in a fall.[10] Doc. #45, Attach. #9 (Dewberry Aff.) at 3-4. The doctor's report also noted that the social worker had indicated that Way was "incarcerated at this time," thus indicating that Way was arrested prior to the doctor preparing the injury report. Id. at 3.[11]

Montgomery County pursued its administrative investigation into the alleged child abuse, the conclusion of which it reported to the Ohio Central Registry of Child Abuse[12] that child abuse allegations against Way had been "substantiated," or confirmed, based on the following facts: (1) the child's statements, (2) the report from the caseworker that she had recently witnessed Way hitting her own child and threatening to hit the foster child, (3) conflicting statements from Way about reporting the alleged fall, and (4) the doctor's report indicating that the injuries could have been intentionally inflicted. Doc. #45, Attach. #7 (Hellmich Dep.) at 111-12, 121, 127. Way was advised that she could appeal this decision by

---

[10]The doctor's report describes two bruises, which were round or oval-shaped and somewhat faint, each measuring about four centimeters. Doc. #45, Attach. #9 (Dewberry Aff.) at 3-4. The doctor also noted "about three" older, milder, nearly resolved bruises, each measuring one-half to one centimeter. Id. at 4.

[11]It is unclear whether this statement indicates that the doctor had been told that Way was incarcerated at the time he examined the child or at the time he prepared the written report. There is also no indication as to the time span between the exam and the preparation of said report.

[12]Montgomery County is mandated by Ohio statute to report any alleged abuse or neglect to the Ohio Department of Job and Family Services Central Registry. Doc. #37, Attach. #3 (Smith Aff.) ¶¶ 2-3 (citing Ohio Rev. Code Ann. § 2151.421(F)). Abuse can either be "substantiated", "indicated" or "unsubstantiated." Doc. #45, Attach. #7 (Hellmich Dep.) at 103-05.

requesting a hearing, which she did. Doc. #45, Attach. #4 (Way Dep.) at 138.

At the hearing, Way and her attorney were allowed to present her position that the child had fallen, but were not permitted to review any of the documents obtained or created by the Montgomery County Department of Children Services during the investigation. Doc. #45, Attach. #1 (Robinson Dep.) at 20, 22. Ultimately, the hearing officer decided to down-grade the Central Registry report to indicate that child abuse was "indicated" or, in other words, supported by reasonable but not conclusive evidence. Id. at 27; Doc. #45, Attach. #7 (Hellmich Dep.) at 104.

The foster children were ultimately removed from Way's care. Doc. #45 (Thompson Dep.) at 44-48. Way was informed, by her foster care agency, that no further children would be placed with her and her husband, by that agency, unless they consented to psychological testing and counseling, which they chose not to do. Id. at 43-48, 66-67. Subsequently, other agencies refused to accept the Ways as foster parents, while at least one other agency offered them an opportunity to be foster parents, although they did not accept. Doc. #45, Attach. #4 (Way Dep.) at 115-18; 221-22.


II.     SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>

<u>v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

<u>Id.</u> at 323; <u>see also Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary to

resolve the difference at trial." <u>Talley v. Bravo Pitino Rest., Ltd.</u>, 61 F.3d 1241,

1245 (6th Cir. 1995); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250

(1986). Once the burden of production has so shifted, the party opposing summary

judgment cannot rest on its pleadings or merely reassert its previous allegations, it is

not sufficient to "simply show that there is some metaphysical doubt as to the

material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified]

pleadings" and present some type of evidentiary material in support of its position.

<u>Celotex</u>, 477 U.S. at 324. "The plaintiff must present more than a scintilla of

evidence in support of his position; the evidence must be such that a jury could

reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv., Inc. v. Babin</u>, 18

F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions,

10

answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255.  If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary

11

judgment . . . .").  Thus, a court is entitled to rely, in determining whether a genuine

issue of material fact exists on a particular issue, only upon those portions of the

verified pleadings, depositions, answers to interrogatories and admissions on file,

together with any affidavits submitted, specifically called to its attention by the

parties.


III.    UNREASONABLE DETENTION AND SEIZURE, IN VIOLATION OF FOURTH
        AMENDMENT, AGAINST HALTER (COUNT I)

        Although the Amended Complaint purports to include Defendant Halter (along

with Defendant Deputy Hobbs) in Count I, which alleges unreasonable detention and

seizure, the Plaintiffs have set forth no evidence or argument to indicate that Halter

in any way detained or seized the Plaintiff.  Because there is no genuine issue of

material fact as to whether Halter unreasonably detained or seized Way, the

Defendants' Motion for Summary Judgment (Doc. #37), as to Count I, is

SUSTAINED.

IV.    VIOLATION OF FIFTH AMENDMENT RIGHT TO DECLINE TO RESPOND TO
       INTERROGATION AND LIBEL, AGAINST HALTER (COUNT II)

       A.    Violation of Fifth Amendment Right to Decline to Respond to
             Interrogation

       The Plaintiffs contend that Halter (and Deputy Hobbs) did not give Way a

Miranda warning, at the time of her arrest. Doc. #26, Attach #1 ¶ 19.  The

Defendants argue that only law enforcement officers are required to give Miranda

warnings and, since Halter was not a law enforcement officer, she had no duty to

give such a warning. Doc. #37 at 11 (citing Williams v. Jones, 2004 U.S. App.

LEXIS 24305 (6th Cir. Nov. 19, 2004)).  Further, even if a Miranda warning was

required, the failure to provide such a warning is only actionable if an incriminating

statement is then coerced and such statement is introduced against the defendant in

a criminal proceeding. Id. at 11-12 (citing Mahoney v. Kersey, 976 F2d 1054,

1061-62 (7th Cir. 1992); Lingler v. Gezymalla, 312 F.3d 237 (6th Cir. 2002)).

Since the Plaintiffs offer no evidence to suggest any of these happenings, the

Defendants assert that there is no constitutional violation. The Plaintiffs provide

nothing in response.

       The Defendants accurately state the law.  The Sixth Circuit has determined

that a Miranda warning is required when the police question a suspect in a custodial

situation. United States v. Bowers, 739 F.2d 1050, 1055 (6th Cir. 1984).  The

Plaintiffs have set forth no evidence to demonstrate that Halter was acting on behalf

of the police, during her questioning of Way, nor that Way was in custody at the

13

time.  Further, as the Defendants contend, even if Miranda warnings were required,

> "mere coercion does not violate the . . . Self-Incrimination Clause
> absent use of the compelled statements in a criminal case."  It is only
> once compelled incriminating statements are used in a criminal
> proceeding, as a plurality of six justices held in Chavez v. Martinez,
> that an accused has suffered the requisite constitutional injury for
> purposes of a § 1983 action.

McKinley v. City of Mansfield, 404 F.3d 418, 430 (6th Cir. 2005) (quoting Chavez

v. Martinez, 538 U.S. 760, 769, 123 S. Ct. 1994 (2003)).  The Plaintiffs have set

forth no evidence to indicate that any statements made by Way were used against

her in a criminal proceeding.  Because there is no genuine issue of material fact, the

Defendants' Motion for Summary Judgment (Doc. #37), on their claim for a

violation of the Plaintiff's Fifth Amendment right to decline to respond to

interrogation in Count II, is sustained.


     B.    Libel

The Plaintiffs also allege a claim for libel, against Halter, in Count II of their

Amended Complaint.  The Defendants assert that there is nothing on the record to

suggest that the Plaintiffs have suffered "stigma plus," as required to establish a

federal defamation claim.  Doc. #37 at 17-18.  The Plaintiffs' only response is in

one sentence in a footnote wherein they generally claim (without legal citation)

that the fact that some agencies refused to give Way an opportunity to be a foster

parent after the events in question is "sufficient to meet the 'stigma plus' test for

14

Kristina Way's federal claim for libel under Section 1983." Doc. #43 at 17 n.5.

The Court agrees with the Defendants, on this point, since the Plaintiffs have set

forth no evidence "to demonstrate the infringement of 'some more tangible

interest[]' than reputation alone, 'such as employment,'"[13] nor did they request a

name-clearing hearing, which is also a prerequisite to asserting such a claim. Harris

v. Detroit Pub. Sch., 2007 U.S. App. LEXIS 17389, 19-20 (6th Cir. 2007) (quoting

Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155 (1976); see also Quinn v.

Shirey, 293 F.3d 315, 323 (6th Cir. 2002) (noting requirement to request name-

clearing hearing before asserting federal defamation claim).  Since there is no

genuine issue of material fact, the Defendants' Motion for Summary Judgment

(Doc. #37), on their libel claim in Count II, is sustained.


V.    CONSPIRACY, IN VIOLATION OF 42 U.S.C. § 1985, AGAINST HALTER
      (COUNT IV)

As their fourth claim for relief, the Plaintiffs allege that Halter and Deputy

Hobbs, "both together and with others, were a coordination or combination of two

or more persons with the intent to deprive Kristina Way of her lawful rights and

liberties and constitute a conspiracy pursuant to 42 U.S.C. [§] 1985." Doc. #26,

Attach #1 ¶ 47.  The Defendants argue that the Plaintiffs have not satisfied the

elements of a § 1985 conspiracy claim.  The Plaintiffs do not directly respond to

_____

[13]See also discussion infra Section VI regarding Plaintiffs' inability to
demonstrate a constitutionally protected right to be foster parents.

this challenge, but, instead allege facts that they assert indicate that "Susan Halter and Chad Hobbs acted in concert," in violating Way's right not to be arrested without probable cause. Doc. #43 (Pls.' Mem. Opp'n) at 12; see also id. at 2-12 (suggesting various ways the evidence could be interpreted to indicate collusion between Hobbs and Halter, in arresting without probable cause).

In making this conspiracy claim, it is unclear under which subsection of 42 U.S.C. § 1985 the Plaintiffs intend to proceed.[14] Other than the general reference to § 1985, in the Amended Complaint, neither that Complaint nor any of the Plaintiffs' briefs make further mention of this Code Section. The Defendants assume that the Plaintiffs are proceeding under the second clause[15] of § 1985(2), which provides a cause of action if

---

[14]The only two likely candidates are the second clause of § 1985(2) and § 1985(3). The Sixth Circuit describes the difference between these two provisions as follows: "the second clause of § 1985(2) . . . prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights[] and § 1985(3) . . . prohibits conspiracies to deprive persons of their equal protection rights." Fox v. Mich. State Police Dep't, 2006 U.S. App. LEXIS 5019, **10-11 (6th Cir. Feb. 24, 2006). Under both provisions, a plaintiff must allege "that there was some . . . class-based, invidiously discriminatory animus behind the conspirators' action," as will be more fully described in the immediately succeeding pages of this Decision. Id. at *11.

In their Motion for Summary Judgment, addressed in a separate Decision, the Clark County Defendants assume that the Plaintiffs are proceeding under § 1985(3). As just explained, however, the analysis is the same under either (3) or the second clause of (2), with regard to the requirement to allege a class-based, invidiously discriminatory animus.

[15]The first clause of § 1985(2), which is clearly not applicable here, pertains to conspiracies to either deter a party or a witness in a federal court from attending or testifying in court, punish parties or witnesses for having attended or testified in federal court, or influence or punish federal jurors. 42 U.S.C. § 1985(2).

two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2). In later briefings, the Plaintiffs do not correct or challenge the notion that they are proceeding under this clause. Thus, the Court will analyze the Plaintiffs' conspiracy claim, in the context of that provision.

In a recent unpublished opinion, the Sixth Circuit quoted an earlier Supreme Court decision, in stating that in order to assert a valid conspiracy claim under the second clause of § 1985(2), "a plaintiff must allege that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Fox v. Mich. State Police Dep't, 2006 U.S. App. LEXIS 5019, *11 (6th Cir. Feb. 24, 2006) (quoting Kush v. Rutledge, 460 U.S. 719, 726, 103 S. Ct. 1483 (1983) and citing Collyer v. Darling, 98 F.3d 211, 233 (6th Cir. 1996)); see also Dallas v. Holmes, 2005 U.S. App. LEXIS 8457, *19 n.5 (6th Cir. May 12, 2005) (same). Nowhere in the Amended Complaint or in any of the Plaintiffs' briefs are there allegations of any class-based motivation with regard to the Defendants' actions. Further, the Plaintiffs point to no law, and the Court has found none on its own, to indicate that the Plaintiffs here were members of any class that is recognized as a suspect class. See Neason v. Clark County, 352 F. Supp. 2d 1133, 1145 (D. Nev. 2004) (finding that persons accused of child abuse

17

are not recognized as a suspect class).[16]

Because the Plaintiffs have failed to set forth any facts to demonstrate that there was some legally recognizable class-based, invidiously discriminatory animus behind the alleged conspirators' actions, the Defendants' Motion for Summary Judgment (Doc. #37), as to Count IV, is SUSTAINED.

VI. VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS, AGAINST MONTGOMERY COUNTY (COUNT IX)

In their ninth claim for relief, the Plaintiffs assert that the manner in which Montgomery County conducted the investigation, disposition, report and administrative appeal of Way's case was in violation of her due process rights.

---

[16]In Neason v. Clark County, the District Court of Nevada was faced with a similar question. In that case, the District Court noted that

[p]ersons accused of child abuse have not been recognized as a suspect class suffering from invidious discrimination by the United States Supreme Court or the United States Court of Appeals for the Ninth Circuit. Plaintiffs have not identified any court that has so held, or any Congressional action that has attempted to extend federal protection to this class. Persons accused of child abuse historically have not needed special federal assistance in the protection of their rights. Additionally, Plaintiffs have offered no evidence that Defendants' alleged conduct was motivated by discriminatory animus towards persons accused of child abuse, rather than legitimate state concerns of protecting children from abuse or neglect and providing comprehensive family services.

352 F. Supp. 2d 1133, 1145 (D. Nev. 2004). The Court, thus, granted the defendants' motion for summary judgment, as to the plaintiffs' § 1985(2) conspiracy claim.

18

Doc. #26, Attach #1 ¶ 59.  Both the Plaintiffs and the Defendants move for

summary judgment on this claim.  The foundation of the Plaintiffs' Motion is two-

fold, to wit: (1) that Ohio's administrative definitions exclude corporal punishment

from the definition of an "abused child" and, therefore, the administrative finding of

abuse in this case was improper; and (2) that Montgomery County's procedures for

appealing abuse reports to the Central Registry are constitutionally defective.  Doc.

#39 at 8-14.  In contrast, the Defendants' position is that the Plaintiff had no

constitutional right to be a foster parent and, thus, she has no foundation on which

to base a due process claim.  Doc. #37 at 12-13.  The Defendants further assert

that, even if Way did have a such a protected constitutional interest, she received

notice and a hearing sufficient to comply with due process requirements.  Id. at 13-

17.

       As the Defendants suggest, the threshold component of a procedural due

process claim is a demonstration that state action has deprived the plaintiff of a

constitutionally protected interest in "life, liberty, or property," without due process

of law. Zinerman v. Burch, 494 U.S. 113, 125 (1990), 110 S. Ct. 975; Michael v.

Ghee, 498 F.3d 372, 377 (6th Cir. 2007).  Central to a plaintiff's case, then, is the

assertion of the deprivation of such a constitutionally protected interest.  In their

Motion for Summary Judgment, the Defendants assert that the Plaintiffs have

failed to assert the violation of such an interest.  The Plaintiffs attempt to counter

this assertion by stating, without citation, that "[f]oster parents have both a liberty

and a contractual or property interest in their eligibility to serve as foster parents

19

and as adoptive parents, free of unjust accusation of child abuse." Doc. #39 at 11.

They then conclude this brief argument by quoting the Supreme Court's opinion in

Cleveland Board of Education v. Loudermill, for the proposition that the afore-

mentioned rights "fall within those 'substantive rights - - life, liberty, and property -

- [which] cannot be deprived except pursuant to constitutionally adequate

procedures.'" Id. (quoting 470 U.S. 532, 541, 105 S. Ct. 1487 (1985)).

While the Plaintiffs accurately quote the Loudermill holding, that decision is

not on point to the case at hand.  The Loudermill decision held, quite succinctly,

that a person may not be deprived of the substantive rights of "life, liberty and

property," without due process of law. 470 U.S. at 541.  The case further

recognized a property interest in continued public employment. Id. ("While the

legislature may elect not to confer a property interest in [public] employment, it

may not constitutionally authorize the deprivation of such an interest, once

conferred, without appropriate procedural safeguards.").  However, the Loudermill

decision can in no way be read to imply that a person has a liberty or property

interest in being a foster parent.[17]

_____

[17]According to the manager of the Foster and Adoptive Resources
Department for Montgomery County Children Services, foster parents are
considered to be volunteers, in that they receive only a stipend to cover the
expenses of the child, rather than a salary or benefits. Doc. #37, Ex. #1 (Hoskins
Aff.) ¶ 14.  The Plaintiffs do not argue this point.

On the contrary, the Sixth Circuit, in a factually similar case, concluded that foster parents do not have a constitutionally protected interest in that relationship sufficient to support a due process claim.  The plaintiffs, in <u>Renfro v. Cuyahoga County Department of Human Services</u>, 884 F.2d 943, 944 (6th Cir. 1989), had been foster parents for six years.  In the course of coordinating a visit with the child's natural parent, a social worker discovered a bruise on the child's bottom. <u>Id.</u> Although the plaintiffs claimed that the child obtained the bruise by falling off a scooter, the agency suspected child abuse and, after an investigation and hearing, refused to return the child to the foster home. <u>Id.</u>  Eventually, the foster parents brought suit, alleging that certain components of the investigation and hearing violated their due process rights. <u>Id.</u>  The Sixth Circuit disagreed, holding that the temporary and transitional nature of the foster care relationship is indicative of the fact that foster parents have no constitutionally protected interest in that relationship. <u>Id.</u>

The same can be said in this case.  The Plaintiffs have neither a "life, liberty nor property" interest in being foster parents.  Since they have no constitutional interest upon which to rest their due process claim, that claim must fail.  There being no genuine issue of material fact on this claim, the Defendants' Motion for Summary Judgment (Doc. #37), as to Count IX, is SUSTAINED and the Plaintiffs' Motion for Partial Summary Judgment (Doc. #39), as to their due process claim, is OVERRULED.

21

VII.   UNLAWFUL DEPRIVATION OF PLAINTIFFS' RIGHTS, AS A RESULT OF
       MONTGOMERY COUNTY'S POLICIES, PROCEDURES AND CUSTOMS, AS
       WELL AS ITS FAILURE TO PROPERLY TRAIN, AGAINST MONTGOMERY
       COUNTY (COUNT VII)

The Plaintiffs also assert a claim under 42 U.S.C. § 1983, alleging that

Montgomery County deprived Way of her constitutional rights, as a result of its

policies, procedures and customs, as well as its failure to properly train its

employees.   "To survive summary judgment in a § 1983 action, [a plaintiff] must

demonstrate a genuine issue of material fact as to the following two elements: 1)

the deprivation of a right secured by the Constitution or laws of the United States

and 2) the deprivation was caused by a person acting under color of state law."

McQueen v. Beecher Cmty. Schs., 433 F.3d 460, 463 (6th Cir. 2006) (emphasis

added) (quoting Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005)).

The seminal Supreme Court case pertaining to policies and practices/

municipal liability, under § 1983, is Monell v. Dept. of Social Services, 436 U.S.

658, 98 S. Ct. 2018 (1978).  The Sixth Circuit explains the Monell rule, as follows:

> A municipality cannot be liable for the constitutional torts of its
> employees; that is, it cannot be liable on a *respondeat superior* theory.
> Rather, liability will attach only where the plaintiff establishes that the
> municipality engaged in a "policy or custom" that was the "moving
> force" behind the deprivation of the plaintiff's rights.

Powers v. Hamilton County Pub. Defender Comm'n, 501 F.3d 592, 607 (6th Cir.

22

2007) (citing Monell, 436 U.S. at 691, 694).[18]  Not only must a plaintiff

demonstrate that the defendant was the "moving force" behind the constitutional

deprivation, the plaintiff must generally do so by setting forth proof of more than a

single incident of unconstitutional activity.

> Proof of a single incident of unconstitutional activity is not sufficient
> to impose liability under Monell, unless proof of the incident includes
> proof that it was caused by an existing, unconstitutional municipal
> policy, which policy can be attributed to a municipal policymaker.
> Otherwise the existence of the unconstitutional policy, and its origin,
> must be separately proved.  But where the policy relied upon is not
> itself unconstitutional, considerably more proof than the single incident
> will be necessary in every case to establish both the requisite fault on
> the part of the municipality, and the causal connection between the
> "policy" and the constitutional deprivation.

Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  Thus, in order to survive

summary judgment on a policies and practices claim under § 1983, a plaintiff must

show that the municipality (Montgomery County, in this case) was the "moving

force" behind the alleged constitutional violation. Monell, 436 U.S. at 691, 694.

Also, a plaintiff must either show that the alleged policy is itself unconstitutional or

put forth "considerably more proof than [a] single incident" to establish municipal

liability. Tuttle, 471 U.S. at 824.

    A related manner in which to hold a municipality liable under § 1983 is to

show that the municipality had a custom or policy of systematically failing to train

---

    [18]The word "municipality," as used in the context of liability under Monell,
includes county governments. See Knott v. Sullivan, 418 F.3d 561, 575 (6th Cir.
2005).

its employees adequately, such that the failure "amounts to 'deliberate indifference' on behalf of the city toward its inhabitants." Gregory v. City of Louisville, 444 F.3d 725, 753 (6th Cir. 2006) (citing City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197 (1989)). In explaining how a plaintiff satisfies the deliberate indifference standard, the Sixth Circuit cites the Supreme Court's holding in City of Canton v. Harris, *supra*, in stating that the plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Gregory, 444 at 753. Further, the plaintiff must demonstrate that there is a "causal link between the policy and the unconstitutional deprivation," in order for the deprivation to be actionable. Arledge v. Franklin County, 509 F.3d 258, 264 (6th Cir. 2007) (citing Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994)). In sum, then, to overcome a motion for summary judgment on a failure to train claim, a plaintiff must show: "(1) that [the training program] is inadequate; (2) that the inadequacy is the result of deliberate indifference; and (3) that the inadequacy is 'closely related to or actually caused the plaintiff's injury.'" Summerland v. County of Livingston, 2007 U.S. App. LEXIS 21045, *25 (6th Cir. 2007) (quoting Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) and citing Harris, 489 U.S. at 390).

In the present case, the Plaintiffs argue that Montgomery County is liable, because of its policies, procedures and lack of training of Halter and those involved in the administrative hearing. Doc. #43 at 14 ("Montgomery County has . . . ratified

and validated all the actions of Susan Halter, such that it can be held liable for her illegal conduct.").  The Plaintiffs do not allege any additional theory or facts here that would substantiate the violation of a newly claimed constitutional right, but rather rely on the constitutional theories they have espoused otherwise in their Amended Complaint and briefings. E.g., Doc. #26, Attach #1 ¶ 53.  Because the Plaintiffs have not demonstrated that any of Halter's actions or anything that transpired during the administrative process amounted to a deprivation of a right secured by the Constitution or laws of the United States, as previously discussed, the Plaintiffs do not have a valid constitutional claim upon which to base their municipal liability claim.  Thus, the Defendants' Motion for Summary Judgment (Doc. #37), as to Count VII, is SUSTAINED.


VIII.   STATE LAW CLAIMS

      "Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits." Pilgrim v. Littlefield, 92 F.3d 413, 417 (6th Cir. 1996) (citations omitted).  Because the Court has now disposed of all of the federal claims against Montgomery County and Halter, it dismisses all of the pendent state law claims against these Defendants, without prejudice to refiling in a state court of competent jurisdiction.

      Should any aspect of the Plaintiffs' federal claims against any one or more or

25

all of the Clark County Defendants survive any pending or renewed motions for summary judgment, thus obligating the court to retain supplemental, state law claims against any one or more or all of those Defendants, the Court would be receptive to the refiling of the state law claims versus the Montgomery County Defendants in this lawsuit.


IX.    CONCLUSION

The Motion of Defendants Halter and Montgomery County for Summary Judgment (Doc. #37), on Plaintiffs' federal claims, is SUSTAINED. They are dismissed from this litigation. The Plaintiffs' Motion for Partial Summary Judgment (Doc. #39) is OVERRULED, as to the due process claim; the Court defers decision on the remaining part of that Motion dealing with the Plaintiffs' due process claims, which is to be addressed in a later Opinion ruling on the Clark County Defendants' Motion for Summary Judgment. Plaintiffs' state law claims against Defendants

Halter and Montgomery County are dismissed, without prejudice to refiling in a state court of competent jurisdiction.

March 29, 2008

_____/s/ Walter Herbert Rice_____

WALTER HERBERT RICE, JUDGE

UNITED STATES DISTRICT COURT

Copies to:

Counsel of record

27