IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION


KRISTINA L. WAY, *et al.*,                    :

      Plaintiffs,                    :

                                  Case No. 3:03cv386

      vs.                    :

                                  JUDGE WALTER HERBERT RICE

MONTGOMERY COUNTY DEPARTMENT  :
OF JOB AND FAMILY SERVICES, *et al.*,

                             :

      Defendants.

---

DECISION AND ENTRY SUSTAINING SUPPLEMENTAL MOTION FOR
SUMMARY JUDGMENT (DOC. #92) OF DEFENDANTS CLARK
COUNTY COMMISSIONERS, CLARK COUNTY SHERIFF AND DEPUTY
SHERIFF CHAD HOBBS; SUPPLEMENTAL STATE LAW CLAIMS SET
FORTH IN COUNTS VI AND X, DISMISSED WITHOUT PREJUDICE TO
REFILING IN A STATE COURT OF COMPETENT JURISDICTION;
JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST
PLAINTIFFS; TERMINATION ENTRY

---

The facts of this case center on Kristina Way's service as a foster parent for

a two-year old child.[1]  During a visit with the child's natural mother, the attending

caseworker noticed bruises on the child, which set in motion a chain of events,

including Kristina Way's arrest, that culminated in the filing of this lawsuit.

---

[1]As the Defendants correctly point out, the child was one month away from
her third birthday, at the time of the incident in question. Doc. #45, Attach. #4
(Way Dep.) at 26-27.

The only Defendant still remaining in this case is Clark County Deputy Sheriff Chad Hobbs. In its opinion addressing a previous Motion for Summary Judgement (Doc. #38) by the Clark County Defendants (Clark County Commissioners, Clark County Sheriff and Deputy Sheriff Chad Hobbs), the Court sustained said Motion, as to all claims against the Clark County Commissioners and the Clark County Sheriff.[2] Doc. #91. As to the claims against Hobbs, the Court sustained the Motion as to some of the claims and overruled it, without prejudice to renewal, as to others.[3] Id. Presently before the Court is the Defendants' Supplemental Motion for Summary Judgment, as to the claims that were previously overruled by the Court. Doc. #92.

The rest of the claims having been disposed of in the Court's previous decision, only the following claims against Defendants Hobbs remain viable, at this stage of the litigation:

• The following claims, premised on the Plaintiffs' claim that Hobbs lacked probable cause to arrest Kristina Way:

   • Fourth Amendment claims of lack of probable cause, unreasonable detention/seizure and failure to obtain a warrant, in Counts I and III[4]

---

[2]Also, in another opinion, the Court sustained a Motion for Summary Judgment by Defendants Montgomery County Department of Children Services and Susan Halter (an employee of Montgomery County Department of Children Services), as to all claims against those Defendants. Doc. #90.

[3]The Plaintiffs had also previously moved for partial summary judgment, as to some of the claims against the Clark County Defendants (Doc. #39), and the Court had overruled that Motion, without prejudice to renewal. Doc. #91. The Plaintiffs have not renewed their Motion, however.

[4]Also contained in Counts I and III was the Plaintiffs' claim for failure to provide notice of Miranda rights. Doc. #26, Attach. #1 (Am. Compl.). The Court

2

- State law claims for false arrest, malicious prosecution, battery and intentional infliction of emotional distress, in Count V

- State law claims contained in Count VI (Terry Way and the Way children's claim for intentional infliction of emotional distress and loss of consortium of Kristina Way, as wife and mother) and Count X (Terry and Kristina Way's claim for loss of consortium with the two foster children, as potential adoptive children)[5]

Doc. #26, Attach. #1 (Am. Compl.); Doc. #91 (Dec. on Summ. J. Mot.). The Defendants have filed a Supplemental Motion for Summary Judgment only as to the claims remaining in Counts I, III and V. Doc. #92.

---

previously sustained the part of the Defendants' original motion that moved for summary judgment on this claim. Doc. #91 at 12-14.

[5]In its opinion on the previous cross Motions for Summary Judgment, the Court noted that neither party had moved for summary judgment on Count VI or Count X, as those claims were asserted against Hobbs. Doc. #91 at 40. In their Supplemental Motion for Summary Judgment, the Defendants suggest that they did move for summary judgment on these claims. Doc. #92 at 2 n.1 (pointing to pages 14 and 18 of Doc. #38, without explanation). Another review of the Defendants' briefing materials in support of their original Motion causes the Court to conclude once again that the Defendants did not move for summary judgment on these two claims.

Specifically, on page 14 of their original Motion, the Defendants move for summary judgment on Kristina's claim of intentional infliction of emotional distress (part of Count V), but not on Terry/Way children's claim of intentional infliction of emotional distress or loss of consortium (Count VI). Doc. #38 at 14. On page 18 of their original Motion, the Defendants conclude their argument that Hobbs is entitled to qualified immunity, but qualified immunity is only applicable to federal claims and the claims set forth in Counts VI and X are state law claims. Id. at 18. Also on page 18 is the Defendants' argument pertaining to immunity under Ohio Revised Code § 2744.02 for all state law claims, but as the Court concluded in its original Opinion (Doc. #91 at 34-35), such immunity only applies to political subdivisions, not to Hobbs in his individual capacity. Id. Contrast Ohio Rev. Code Ann. § 2744.03(A)(6) (covering immunity for individual governmental employees).

The facts of this case are fully set forth in the Court's previous opinion (Doc. #91) and will only be reiterated herein to the extent necessary to expound on the Court's legal reasoning. The Court will now proceed by setting forth the standard for ruling on motions for summary judgment and then turn to an analysis of the Defendants' supplemental motion.

I.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is

4

not sufficient to "simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. <u>Celotex</u>, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv., Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56[©]. Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. <u>Anderson</u>, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

II.     Fourth Amendment Claims in Counts I and III

The Plaintiffs assert the following claims under the Fourth Amendment, all premised on the primary claim that Hobbs arrested Way without probable cause: unreasonable detention and seizure and failure to obtain a warrant. Doc. #26, Attach. #1.  The Plaintiffs also assert certain state law claims, in Count V of their Amended Complaint, premised on the alleged lack of probable cause. Id.  The Court

6

will begin with a review of the Defendants' original Motion for Summary Judgment on these claims and then proceed to an analysis of the Supplemental Motion for Summary Judgment that is presently before the Court.

A.    Original Motion for Summary Judgment

The Plaintiffs originally alleged that there was no probable cause for Way's arrest, because Deputy Hobbs arrested her on an inapplicable charge of domestic violence, arguing that "the domestic violence statute does not apply to a foster parent-foster child relationship." Doc. #39, Attach. #1 at 1.  Furthermore, they argued that no other statute applies because, "even assuming that the foster child's bruise was not accidental and arose from corporal punishment (which Mrs. Way adamantly denies), corporal punishment which does not create a substantial risk of physical harm does not constitute domestic violence or any other crime, including child endangerment." Id.  In sum, the Plaintiffs argued that Hobbs did not have probable cause for the arrest because there is no applicable statutory section under which Hobbs could have arrested Kristina Way.

In response, the Defendants' argument was two-fold.  First, they conceded that Hobbs made an arrest on the wrong charge, but argued that the Constitution is not violated when an officer makes an arrest on the wrong charge, as long as there is probable cause to make the arrest under a different charge. Doc. #38 at 10 (citing Devenpeck v. Alford, 543 U.S. 146, 125 S. Ct. 588 (2004)).  The Defendants then

contended that there was probable cause to arrest Way under Ohio Revised Code

§ 2151.031(E),[6] which defines an "abused child" to include a child who is subject

to out-of-home child abuse.

In its ruling on the original Motion for Summary Judgment, the Court

determined that the domestic violence statute did not apply to the present case,

because of its irrelevance to foster care relationships, but that making an arrest on

the wrong charge did not necessarily violate the Constitution, so long as probable

cause existed for making the arrest under some other proper criminal statute. Doc.

#91 at 16-18.  The Court went on to conclude that Ohio Revised Code

§ 2151.031(E), which the Defendants pressed as the proper grounds for probable

cause, did not help the Defendants' case, because it was not a criminal statute. Id.

at 19-21.

The Court then opined that Ohio Revised Code § 2919.22, Ohio's child

endangerment statute, appeared to most closely fit the facts of the present case,

but the application of that statute had not been fully briefed by the parties.  Thus, it

overruled the parties' Motions for Summary Judgment, as to the claims premised on

the lack of probable cause, without prejudice to renewal, as long as the parties

limited any future arguments to the issue of probable cause and the applicability of

_____

[6]The Defendants actually cite § 2151.04, but it is clear that they are
referring to § 2151.031(E), because they quote the text of the latter Code
provision. See Doc. #41 at 2-3; see also Doc. #42 at 4-5 (in which Montgomery
County argues this same point, yet refers to the proper Code section).

8

Ohio Revised Code § 2912.22 or some other pertinent criminal statute. Id. at 22-23.

B.    Supplemental Motion for Summary Judgment

The Defendants have renewed their previous Motion, in the form of the
Supplemental Motion for Summary Judgment presently at issue before the Court.
Therein, the Defendants assert that Hobbs had probable cause to arrest Kristina
Way under Ohio's child endangerment statute, § 2912.22, as well as under Ohio's
assault statute, § 2903.13. Doc. #92.  Alternatively, the Defendants argue that
even if Hobbs did not have probable cause for the arrest, he is still entitled to
summary judgment, under the theory of qualified immunity.  The Court will first
determine whether Hobbs had probable cause to arrest Way and then, if necessary
turn to the parties' arguments pertaining to qualified immunity.

1.    Probable Cause

At the onset, the Plaintiffs argue that the Court need not address whether
probable cause existed under the assault statute, because as a statute of general
prohibition, it does not apply in circumstances specifically addressed by the child
endangerment statute. Doc. #93 at 4-5.  While the Plaintiffs correctly state a
general proposition of Ohio law,[7] such does not apply at this stage of a criminal

---

[7]See Ohio Rev. Code Ann. § 1.51 (noting that if a general provision
irreconcilably conflicts with a special provision, "the special or local provision

proceeding. Ohio case law establishes that a criminal defendant may be charged with two crimes that are "allied offenses of similar import"[8] (which is what the Plaintiffs seem to be arguing), although the State is ultimately prohibited from convicting the defendants of both such crimes. State v. Brown, 38 Ohio St. 3d 305, 317, 528 N.E.2d 523 (1988) (citing State v. Osborne, 49 Ohio St. 2d 135, 359 N.E. 2d 78 (1976)); see also Ohio Rev. Code Ann. § 2941.25(A) ("Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."). Because Clark County could have originally charged Way with both child endangerment and assault, the Court will proceed with an analysis of whether Hobbs had probable cause to arrest Way for either crime.

The Fourth Amendment to the Constitution provides that "[t]he right of the

---

prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail"); State ex rel. Dublin Sec. v. Ohio Div. of Sec., 68 Ohio St. 3d 426, 429, 627 N.E.2d 993 (1994) (holding that "when two statutes, one general and the other special, cover the same subject matter, the special provision is to be construed as an exception to the general statute which might otherwise apply").

[8]The Court assumes, without deciding, that criminal assault and child endangerment are "allied offenses of similar import", as the Plaintiffs seem to contend. In determining whether two crimes are "allied offenses of similar import", courts must "analyze the elements of each offense to determine if those elements 'correspond to such a degree that the commission of one offense will [automatically] result in the commission of the other.'" State v. Preston, 23 Ohio St. 3d 64, 65, 491 N.E.2d 685 (1986) (quoting State v. Talley, 18 Ohio St. 3d 152, syl., 480 N.E.2d 439 (1985)).

people to be secure in their persons . . . shall not be violated . . ., but upon probable

cause . . . ." U.S. Const. amend. IV. "Generally, probable cause exists when the

police 'have reasonably trustworthy information . . . sufficient to warrant a prudent

man in believing that the [suspect] had committed or was committing an offense.'"

Gardenhire v. Schubert, 205 F.3d 303, 315 (6th Cir. 2000) (quoting Beck v. Ohio,

379 U.S. 89, 91, 85 S. Ct. 223 (1964)).

> The principal components of a determination of reasonable suspicion
> or probable cause will be the events which first occurred leading up to
> the stop or search, and then the decision whether these historical
> facts, viewed from the standpoint of an objectively reasonable police
> officer, amount to reasonable suspicion or to probable cause.

Id. at 312 (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S. Ct. 1657

(1996)). Probable cause determinations require an examination of all of the facts

and circumstances known to the officer at the time of the arrest. Radvansky v. City

of Olmsted Falls, 395 F.3d 291, 310 (6th Cir. 2005) (citing Carroll v. United

States, 267 U.S. 132, 162, 45 S. Ct. 280 (1925)).

The Court will now examine the facts and circumstances known to Hobbs at

the time he arrested Way, construed most strongly in favor of the Plaintiffs, in order

to determine whether, viewed from the standpoint of an objectively reasonable

police officer, they amounted to reasonable suspicion or probable cause to arrest

Way for child endangerment. If necessary, the Court will then turn to a similar

analysis for the allegations pertaining to an arrest for assault.

The pertinent facts indicate that, while assisting the foster child in the

11

bathroom, a caseworker noticed bruises on the child's bottom. Doc. #45, Attach. #6 (Weger Dep.) at 16-17. Upon an inquiry by the caseworker as to what happened, the child responded, "mommy whipped me." Id. at 17-18. "Mommy" was the name the child used to identify Kristina Way. Id.; Doc. #45, Attach. #4 (Way Dep.) at 27. Soon thereafter, a special investigator, with training in questioning young children concerning potential abuse, interviewed the child and the child once again indicated that Way had hit her. Doc. #45, Attach. #5 (Halter Dep.) at 16-23, 33-34, 39, 104-07; Doc. #45, Attach. #8 (Ridgeway Aff.) ¶ 4.

The caseworker then requested that Clark County dispatch a Sheriff's deputy, at which time it sent Deputy Hobbs. Doc. #45, Attach. #4 (Way Dep.) at 37-39, 41-42; Doc. #45, Attach. #5 (Halter Dep.) at 49-53. After personally observing the bruises, Hobbs interviewed the child and the child similarly told him that Way had hit her. Doc. #45, Attach. #2 (Hobbs Dep.) at 19-20, 25.

Way was summoned to the scene and questioned about the child's bruises. Doc. #45, Attach. #4 (Way Dep.) at 42. She stated that the child had fallen off a small plastic table onto some toys on the floor. Doc. #45, Attach. #5 (Halter Dep.) at 69-70, 80.

At some point in time, a caseworker from the private foster care agency that managed Way's foster parenting arrangement arrived and told Hobbs that, about eleven days before, she had observed Way spank her natural child with a wooden spoon and threaten to do the same to the foster child. Doc. #45, Attach. #10

(Evans-Howe Aff.) ¶¶ 6-8, 14, 18.  The caseworker testified that after hearing Way

threaten the foster child, she "instructed Kristina about appropriate ways of

disciplining foster children and that the [S]tate's rules . . . prohibited parents from

physically punishing foster children." Id. ¶ 8.

The attending physician at Children's Medical Center's Emergency Room

eventually examined the child.  The doctor's report indicates, in general, that the

child was "[w]alking around playful and laughing." Doc. #45, Attach. #9 (Dr.

Chabali Report, dtd. Nov. 27, 2001) at 3.  As to the bruising, the doctor's report

notes the following:

> The upper buttocks have each round to oval-shaped brownish [bruises]
> that are somewhat faint.  The one on the right has areas of clearing
> inside it and the one on the left seems to be confluent and not have
> any area of clearing. . . .  The bruises are about 4 cm each.[9]  There
> are [also] older, milder, nearly resolved, very faint, ½ to 1 cm bruises,
> about three total, in the bony prominences of the spine.[10]

Id. at 3-4.  The doctor concluded that he could not ascertain how the bruises were

sustained, noting that they could either have been intentionally inflicted or the child

could have sustained them in a fall. Id. at 4.

---

[9]One centimeter equals .3937 inch, thus four centimeters equals
approximately 1.6 inches. http://qrc.depaul.edu/Conversion.htm.

[10]The Defendants have filed two photographs of the child's bruises. Doc.
#64 at 3-4.  The Court does not find the photographs helpful in resolving the issue
before it.  Although the images are clear, the bruises are not sufficiently defined
(whether due to the actual condition of the bruises, the lighting, the angle, or other
photographic qualify issues) to aid the Court in making its decision.  Given the
doctor's detailed description of the bruises, made upon his contemporaneous visual
examination of the same, the Court will rely on that description in ruling hereunder.

The Defendants first assert that Hobbs had probable cause to arrest Way under Ohio's child endangerment statute, Ohio Revised Code § 2919.22.  The pertinent part of that statute provides that no person shall do the following to a child under eighteen years of age:  "[a]dminister corporal punishment or other physical disciplinary measure . . ., which punishment [or] discipline . . . is excessive under the circumstances and creates a substantial risk of <u>serious physical harm</u> to the child." Ohio Rev. Code Ann. § 2919.22(B)(3) (emphasis added).  The Ohio Revised Code defines "serious physical harm" to include the following:  "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."[11] Ohio Rev.

_____

[11]In its entirety, this provision states that "serious physical harm" means any of the following:

> (a)   Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b)   Any physical harm that carries a substantial risk of death;
>
> (c)   Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d)   Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e)   Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

Ohio Rev. Code Ann. § 2909.01(A)(5).  The Defendants assert that only subparagraph (e) is applicable to the present case. Doc. #92 at 3.

Code Ann. § 2901.01(A)(5)(e). In applying this statutory language, Ohio courts

have also looked to the annotation to this definitional Section, which includes

Committee comments to the 1974 House Bill for that statute. E.g., In re Rogers,

1989 Ohio App. LEXIS 3344, *4 (Ohio 3rd App. Dist. Aug. 24, 1989). Those

comments state that the definition of "serious physical harm to persons" includes

"pain which is unbearable or nearly so, though short-lived, and pain which is

long-lasting or difficult to relieve, though not as keen." Ohio Rev. Code Ann.

§ 2901.01, annotation (1974 Committee Comment to House Bill 511).

At the outset, the Court notes that the parties have not pointed to, nor has

the Court independently found, any case that is similar to the present one, in the

sense that a court is determining whether there was probable cause for an arrest

under subparagraph (B)(3) of the child endangerment statute, § 2919.22.[12]  Rather,

the vast majority of the cases that apply § 2919.22(B)(3) do so in the context of a

custody determination in a juvenile court proceeding, as opposed to in the criminal

---

[12]The one case the Court has found that is arguably similar to the present one is State v. Albert, 8 Ohio Misc. 2d 13, 17, 456 N.E.2d 594 (Ohio County Ct. 1983). That case is different, however, in a couple of important aspects, to wit: (1) the court was not faced with a question of probable cause, but rather with the guilt or innocence of the defendant; and (2) the alleged serious physical harm came about as a result of a school principal administering corporal punishment to a student, which prompted the court to devote a considerable part of its opinion to certain sections in Chapter 3319, which governs the conduct of school administrators, and how those statutory provisions interface with § 2919.22. In Albert, the court ultimately concluded that the State had not proved beyond a reasonable doubt that the principal's conduct in spanking a nine year old student with a wooden paddle, for various incidents of misbehavior that occurred over a three day period and which resulted in a welt and tenderness on the child's buttocks, created a substantial risk of serious physical harm to the student. Id.

context.  Chapter 2151 of the Ohio Revised Code pertains to juvenile courts. Among other things, § 2151.353 governs the custody disposition of an "abused" child.  In order to determine if a child is abused, juvenile courts must apply § 2151.031, which defines such children to include those who are "endangered as defined in section 2919.22" and those who "exhibit[] evidence of corporal punishment or other physical disciplinary measure," if such measure is prohibited under § 2919.22. Ohio Rev. Code Ann. § 2151.031(B), (C).  Thus, juvenile courts must apply the child endangerment statute, § 2919.22, in resolving issues involving abused children.

Many of these custody cases with similar fact patterns to the present case, as far as the injuries to the children in question are concerned, have held that although bruising alone is not sufficient to support a finding of "serious physical harm",[13] bruising may support a finding of child endangerment (or abuse) if it is "accompanied by the presence of other facts and circumstances the totality of which satisfies the requirements of . . . R.C. 2919.22(B)(3) and R.C. 2901.01(A)(5)(e)."[14] In re Horton, 2004 Ohio App. LEXIS 5683, *19 (Ohio 10th

--------------------

[13]The concern here is that allowing the existence of bruising alone to support a finding of "serious physical harm" would "place upon the administrator of the corporal punishment a burden of strict liability." In re Surfer, 1998 Ohio App. LEXIS 2107, *8 (Ohio 10th App. Dist. Apr. 5, 1998) (quoting State v. Albert, 8 Ohio Misc. 2d 13, 17, 456 N.E.2d 594 (Ohio County Court 1983)).

[14]As noted above, § 2919.22(B)(3) provides that no person shall administer corporal punishment, to a child under the age of eighteen, if such punishment is excessive under the circumstances and "creates a substantial risk of serious physical harm," while § 2901.01(A)(5) defines "serious physical harm".

App. Dist. Nov. 23, 2004).   Following is a summary of juvenile court cases with somewhat similar fact patterns to the present case, to include the "other facts and circumstances" the courts determined were significant in rendering those decisions:

- The Appellate Court, in In re Horton, 2004 Ohio App. LEXIS 5683, *19 (Ohio 10th App. Dist. Nov. 23, 2004), concluded that deep bruises inflicted on an eleven year old child, by the use of a belt and as punishment for not completing homework, created a substantial risk of serious physical harm.

- In Clark v. Clark, 114 Ohio App. 3d 558, 559-62, 683 N.E.2d 800 (Ohio 12th App. Dist. 1996), the Court determined that a nine year old child who sustained a welt and a bruise when her father hit her with a paddle for a series of acts of misconduct was not at substantial risk of serious physical harm since there was no evidence that the child was in "great pain, that she had trouble sitting or walking, or that she now has a scar."

- The Court, in In re Surfer, 1998 Ohio App. LEXIS 2107, **7-10 (Ohio 10th App. Dist. Apr. 5, 1998), found that slapping a six year old child, with a known propensity for nose bleeds, in the face with such force that he suffered a nose bleed, as a disciplinary measure, created a substantial risk of serious physical harm.

- The Appellate Court determined, in In re Schuerman, 74 Ohio App. 3d 528, 531-32, 599 N.E.2d 728 (Ohio 3rd App. Dist. 1991), that a child was at a substantial risk of serious physical harm when she suffered severe bruising on her buttocks, upper thighs, and around her ankles and wrists, as a result of being hit multiple times with a belt for an incident of misbehavior, since such bruising "could certainly be inferred to create pain that would be unbearable or nearly so to an eight-year-old."

- Likewise, in In re Rogers, 1989 WL 98423, *2 (Ohio 3rd App. Dist. Aug. 24, 1989), the Court concluded that disciplining a child under the age of two by paddling him numerous times with a two inch board, which resulted in severe bruising across his buttocks, "could certainly be inferred to create pain that would be unbearable or nearly so to a two-year-old child" and, thus, constituted a substantial risk of serious physical harm.

The Court first makes a general observation that each of the above-cited cases was decided (as explained above) in the context of a juvenile court proceeding. The principal question before each court was whether the child was abused, as defined in juvenile court statutory section 2151.031, and the decisions were reached on the basis of a fully developed factual record. In contrast, the present case is in quite a different posture. Herein, this Court is tasked with determining whether the facts and circumstances available to Deputy Hobbs, construed in the light most favorable to the Plaintiffs as the parties against whom the motion is directed, on the day in question, were sufficient when viewed from the standpoint of an objectively reasonable police officer, to have given him reasonable suspicion or probable cause to suspect that Way had administered corporal punishment, and that such was excessive under the circumstances and created a substantial risk of serious physical harm to the child. The Court concludes that Hobbs did have such probable cause.

To begin, the Court notes that Hobbs could have reasonably believed that Way had administered corporal punishment and that such was excessive under the circumstances, based on the following: (1) the child's multiple, consistent statements that Way had hit her, (2) the caseworker's statement that she had seen Way punish her own children with a wooden spoon and threaten to punish the foster child in the same way, and (3) the State's rule that prohibited foster parents from physically punishing foster children.

As to whether such punishment created a substantial risk of serious physical harm, the answer is less clear, but is still resolved in favor of the Deputy. The Plaintiffs argue that the foster child's bruises were not sufficiently severe in appearance, nor was the child exhibiting any signs of being in pain and, thus, she clearly did not have any "physical harm that involve[d] acute pain of such duration as to result in substantial suffering or that involve[d] any degree of prolonged or intractable pain," as required by § 2901.01(A)(5)(e). The Court disagrees.

The doctor noted five bruises on the child's posterior, two of which were approximately 1.6 inches in diameter - - large bruises for a two year old child. The Court takes judicial notice[15] of the fact that bruises fade in both size and intensity as time passes. The fact that other courts have noted that a child's bruises were "severe" or "very deep", while the doctor in this litigation noted that the bruises were "somewhat faint" is not significant, as bruises eventually become smaller and more faint over time. The officer in the present case had no reason to know when the child had sustained the bruises in question[16] and the law imposes no requirement that abuse or endangerment be immediately detected. Further, it is

─────────────────

[15]See Ohio Bell Tel. Co. v. Public Utilities Com., 301 U.S. 292, 301, 57 S. Ct. 724 (1937) ("Courts may take judicial notice of matters of common knowledge.").

[16]See Illinois v. Gates, 462 U.S. 213, 231, 103 S Ct. 2317 (1983) ("In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.") (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302 (1949)).

clear (i.e., there is no genuine issue of material fact) that a two year old child would experience some degree of prolonged pain (or pain which is long-lasting or difficult to relieve, though not as keenly unbearable, as provided in the Committee notes), particularly when sitting or otherwise putting pressure on the bruised area, while her body heals from two such sizable bruises. Thus, the Court concludes that an objectively reasonable police officer would have found probable cause to arrest Way for child endangerment. Accord In re Horton, 2004 Ohio App. LEXIS 5683, *19 (Ohio 10th App. Dist. Nov. 23, 2004) (wherein custodian argued that child neither sought nor received any medical treatment as a result of being hit by a belt and, further, that he ran in five foot races at school on the day following the incident, yet court still concluded child's injuries were sufficiently severe to constitute abuse).

Because the Court concludes that there is no genuine issue of material fact as to whether Hobbs had probable cause to arrest Way for child endangerment, it is not necessary to determine whether he also had probable cause to arrest her for criminal assault, a more general statutory prohibition.


2.    Qualified Immunity

The Defendants also claim that even if Hobbs's actions violated Way's constitutional rights, her claims are barred by qualified immunity. In addressing qualified immunity claims, the Sixth Circuit points to the Supreme Court's decision

in <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001), in stating that courts must initially consider whether "the facts alleged show the officer's conduct violated a constitutional right" and, if so, "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." <u>Lyons v. City of Xenia</u>, 417 F.3d 565, 571 (6th Cir. 2005).

The Court concludes that even if the probable cause analysis had not tipped in favor of Hobbs, summary judgment would still be appropriate, because Hobbs is entitled to qualified immunity. As noted earlier, the Court has found no sufficiently similar Ohio cases addressing the question of probable cause to arrest a suspect for child endangerment, under § 2919.22(B)(3). Furthermore, the juvenile court cases that apply §2919.22(B) (through § 2151.031), as summarized above, do not "clearly establish" that an officer does not have probable cause to arrest a foster mother, given the "specific context of this case." Accordingly, there is no showing of a violation of a constitutional right.

In sum, there is no genuine issue of material fact as to whether Hobbs had probable cause to arrest Way for child endangerment. Furthermore, even assuming he <u>did not</u> have probable cause for the arrest, there is no genuine issue of material fact as to whether he is entitled to qualified immunity. Therefore, the Court SUSTAINS the Defendants' Supplemental Motion for Summary Judgment (Doc. #92), which is applicable to the following claims: Kristina Way's Fourth

Amendment claims of lack of probable cause, unreasonable detention/seizure and failure to obtain a warrant, in Counts I and III, and her state law claims for false arrest, malicious prosecution, battery and intentional infliction of emotional distress, in Count V.

III.    Remaining State Law Claims

As discussed *supra*, the Defendants have not moved for summary judgment on the state law claims contained in Count VI (Terry Way and the Way children's claim for intentional infliction of emotional distress and loss of consortium of Kristina Way, as wife and mother) and Count X (Terry and Kristina Way's claim for loss of consortium with the two foster children, as potential adoptive children).  Those claims are the only claims that remain, at this point in the litigation.

"[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims." Brown v. Cassens Transp. Co., 546 F.3d 347, 363 (6th Cir. 2008) (citing 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966)).  Because the Court has now disposed of all of the federal claims herein, it dismisses the remaining supplemental (fna pendent) state law claims

contained in Counts VI and X, without prejudice to refiling in a state court of competent jurisdiction.[17]

IV.    Conclusion

The Court SUSTAINS the Defendants' Supplemental Motion for Summary Judgement (Doc. #92), which applies to the following claims:

- Fourth Amendment claims (probable cause, unreasonable detention/seizure and failing to obtain a warrant), in Counts I and III

- State law claims for false arrest, malicious prosecution, battery and intentional infliction of emotional distress, in Count V

Thus, the only claims remaining to be addressed between these parties are those state law claims against Hobbs that are contained in Counts VI and X, of the Amended Complaint.  All of the Plaintiffs' federal claims having been disposed of, however, the Court dismisses these remaining state law claims, without prejudice to refiling in a state court of competent jurisdiction.

Judgment is to be entered on behalf of the Defendants and against the Plaintiffs.

_____

[17]The Court questions whether these claims are viable, given that the question of probable cause has now been resolved, but does not decide that issue, since the parties have not put it before the Court.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

January 20, 2009

    /s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record